UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ellsworth Kneal, by his Attorney-in-Fact,
James R. Beckey,

    Plaintiff,

v.                                                                       Civil No. 08-1193 (JNE/JJK)
                                                                        ORDER

Sentry Insurance, a Mutual Company
d/b/a SENTRY Life Insurance Company,

    Defendant.

---

Wilbur W. Fluegel, Esq., Fluegel Law Office, appeared for Plaintiff.

Paula Weseman Theisen, Esq., Meagher & Geer PLLP, appeared for Defendant.

---

      Ellsworth Kneal brought this action against Sentry Insurance d/b/a SENTRY Life Insurance Company (Sentry), alleging that Sentry breached its fiduciary duty and violated the Racketeer Influenced and Corrupt Organizations Act (RICO). Kneal also sought a declaration of his rights under an insurance policy. The Court dismissed Kneal's RICO claim on September 26, 2008. The matter is now before the Court on Sentry's Motion for Summary Judgment on the remaining claims. For the reasons stated below, the Court grants Sentry's motion.

## I.    BACKGROUND

      In 1987, Kneal, who was seventy years old, procured a long-term care insurance policy (Policy) that was underwritten by Sentry. At that time, the Policy provided a Nursing Home Daily Benefit (Nursing Home Benefits) and a Home Health Care Benefit for Prescribed Long Term Care (Home Health Care Benefits). Without increasing the premium, Sentry added three benefits to the Policy in 1995, including an Alternative Plan of Care Provision (Alternative Care Provision). The Alternative Care Provision provided that if Kneal "would otherwise qualify for

1

benefits under the policy, [Sentry] will consider paying for alternative services under a written Alternative Plan of Care" that was developed by Kneal's doctor as a plan of care and acceptable to Kneal, his doctor, and Sentry.

A "nursing home" under the Policy is, among other things, "a facility that is licensed as a nursing home under Minnesota Department of Health Chapter 144A." A "Home Health Care Agency" is defined as "an entity that provides homecare services and is . . . licensed as a home health agency where a state licensing statute exists, or is acceptable to Sentry if licensing is not required." "Home health care" constitutes "prescribed services for the long term care and treatment of an insured" that are "provided by a Home Health Care Agency according to a written diagnosis and plan of care." These services include "nursing and related personal care services under the direction of a registered nurse, including the services of a home health aide; physical therapy; speech therapy; respiratory therapy; [and] occupational therapy." Expressly excluded from the definition of "home health care" are "nutritional services provided by a licensed dietician; homemaker services, meal preparation, and similar nonmedical services; medical social services; and other similar medical services and health-related support services." The Policy specifies that "prescribed long term care" is "a service, type of care, or procedure that could not be omitted without adversely affecting the patient's illness or condition and is specified in a plan of care prepared by a Doctor and a registered nurse and is appropriate and consistent with the diagnosis."

In 2005, Kneal began living in a residential retirement community owned and operated by Colonial Acres Home, Inc. d/b/a Covenant Village of Golden Valley (Covenant Village). Covenant Village consists of four separate facilities, each of which provides a different level of care. Independent living is available in residential apartments, housing with services is provided

2

at Woodside Terrace, assisted living is provided at Heritage House, and full nursing home care is provided at Colonial Acres Health Care Center (Colonial Acres). Woodside Terrace, Heritage House, and Colonial Acres are registered or licensed in Minnesota to provide the level of care offered.[1]

Woodside Terrace provides certain standard services to residents, including apartment management; laundry; meal preparation; grocery shopping; and health care consultation, monitoring, and temporary care from a licensed nurse employed by Covenant Village. For an additional fee, Woodside Terrace provides medication management services. Woodside Terrace, however, does not assist with "activities of daily living" (ADL), which include activities such as ambulating, dressing, grooming, bathing, eating, and toileting. An individual needing assistance with ADL can either live at Woodside Terrace and contract with an outside organization to provide those services or live in Heritage House.

As part of Covenant Village's application process, Kneal procured a report from his physician, Earl Orth, in December 2004. In that report, Orth diagnosed Kneal with ataxia, peripheral neuropathy, and peripheral edema, but noted that, with the exception of a "wobbly" gait due to ataxia, Kneal had good functional abilities and did not need assistance for bathing, grooming, dressing, or toileting. Kneal began living at Woodside Terrace on May 27, 2005, and paid an additional fee for medication management services that were provided by a registered nurse. Kneal resided at Colonial Acres during July 2005, but returned to Woodside Terrace thereafter.

In response to an inquiry from Kneal about filing a claim under the Policy, Sentry sent a letter to him on November 27, 2006, requesting completion of a claim form, copies of the state

---

[1] There is a dispute in the record as to whether Woodside Terrace is licensed to provide assisted living. This dispute is not material.

license from the long-term care provider, the referring doctor's plan of care, copies of itemized bills, and a certified copy of power of attorney papers, if applicable. Kneal returned the claim form in February 2007. The portion of the form completed by Orth indicated that Kneal was not in a nursing home or a candidate for home health care. Sentry notified Kneal in a February 21, 2007, letter that it still needed a doctor's plan of care, the proper license, an explanation of certain charges on the itemized bills, and an explanation of the delay in filing the claim. After a telephone conversation between Kneal, Kneal's friend James Beckey, and Elise Nornberg, a Sentry claims representative, Nornberg indicated in a March 5, 2007, letter that Sentry would contact the State of Minnesota for the required licensing information and request a plan of care from Orth.

After being contacted by Sentry, Orth indicated that he had not seen Kneal in over a year and recommended that Kneal schedule an appointment for an occupational or physical therapy assessment. Kneal complied, and Orth wrote an assessment on April 24, 2007, noting that Kneal's health had deteriorated over the years, "resulting in problems with bowel and bladder continence, difficulty in dressing, and difficulty with transferring and ambulating because of significant ataxia and neuropathy." Orth stated that Kneal needed "assistance in cooking, shopping for groceries, transportation for medical appointments, housecleaning, laundry, management of medication because of forgetfulness, and assistance in paying bills." Orth further recommended continuation of the services Kneal was receiving at Woodside Terrace, which included "meal preparation, assistance with laundry on a weekly basis, assistance in changing the bed and linens, grocery shopping, supervision of his medication, housekeeping services, ordering his medication and setting up his medications on a biweekly basis."

Sentry informed Kneal in a May 24, 2007, letter that he was residing in a facility licensed to provide "housing with services," and that based on Orth's assessment, Kneal qualified for Home Health Care Benefits to pay for his medication management services. Sentry noted, however, that because "medication reminders and set-ups are the only services needed," it did not find reimbursement of housing expenses under the Alternative Care Provision acceptable. On June 11, 2007, Beckey, purportedly acting with power of attorney, returned the checks Sentry had issued to pay for Kneal's medication management services as "totally unacceptable and inappropriate." Sentry reiterated its benefits determination in a June 15, 2007, letter to Kneal, and asked him to provide further information if he was receiving "assistance with toileting, dressing or transferring" on a routine basis. Beckey subsequently filed a claim with the Minnesota Department of Commerce that was rejected on June 28, 2007.

Kneal suffered a heart attack requiring hospitalization in December 2007. On January 4, 2008, Kneal was discharged from the hospital and placed in Colonial Acres until his return to Woodside Terrace on March 13, 2008. At that time, Kneal began receiving home health care services from AgeWell Home Care (AgeWell). Initially, an AgeWell home health aide assisted Kneal with bathing and toileting as well as minor housekeeping and food preparation services two to three times per week for four hours at a time. Beginning in June 2008, a home health aide visited Kneal for four hours each weekday morning to provide additional assistance with bathing, dressing, toileting, and ambulating. Those services became daily the following month. In October 2008, AgeWell began providing services eight hours per day on weekdays and four hours per day on weekends. Finally, in March 2009, AgeWell's services increased to eight hours per day seven days a week. On April 23, 2009, Kneal was admitted to the hospital and later returned to Colonial Acres.

Meanwhile, Beckey had filed this action against Sentry on Kneal's behalf on May 1, 2008, seeking a declaration of Kneal's rights under the Policy and asserting claims for breach of fiduciary duty and violation of RICO. The Court dismissed Kneal's RICO claim on September 26, 2008, but denied Sentry's motion for judgment on the pleadings on the other claims. Sentry brought the instant motion for summary judgment on July 28, 2009. That same day, Sentry provided Kneal's counsel with a check for $69,871.50.[2] The check covered Nursing Home Benefits for the time Kneal resided at Colonial Acres; Home Health Care Benefits for the services provided by AgeWell between March 2008 and September 2008; and Home Health Care Benefits reimbursed at the Nursing Home Benefits rate pursuant to the Alternative Care Provision for AgeWell's services between October 2008 and April 2009. Sentry also determined that Kneal's present condition entitles him to continuing Nursing Home Benefits until his death or exhaustion of the lifetime maximum benefits. The only remaining issues are whether Kneal is entitled to benefit payments under the Policy for certain expenses he incurred at Woodside Terrace and whether Sentry breached a fiduciary duty.[3]

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify

---

[2] Sentry sent another check two days later for an additional $125.26 due to an error in calculating the benefits.

[3] Kneal also indicates that an issue remains as to whether benefits are available "for the ongoing cost of supplemental aid provided by AgeWell." Kneal, however, is presently in a facility that provides full nursing home care, and the record contains no evidence that he needs or is receiving supplemental aid. Accordingly, the Court finds that no dispute exists as to coverage under the Policy for supplemental aid.

"those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Policy interpretation**

Kneal concedes that Woodside Terrace is not a nursing home and that he is not entitled to Nursing Home Benefits during his residency there. Moreover, it is undisputed that the expenses Kneal incurred at Woodside Terrace for rent, housekeeping, and food services are not covered by the Home Health Care Benefits. Kneal, however, maintains that those expenses are covered under the Alternative Care Provision. Specifically, Kneal argues that the Alternative Care Provision applies so long as an insured is eligible for benefits and the care received was prescribed by a doctor.

The parties agree that Minnesota law applies. Under Minnesota law, "[i]nterpretation of an insurance policy is a question of law." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Unambiguous language receives its plain and ordinary meaning; ambiguous language is construed against the insurer. *Id.* A court looks at the language of a policy to determine if it is ambiguous. *Pedersen v. United Servs. Auto. Ass'n*, 383 N.W.2d 427, 430 (Minn. Ct. App. 1986). Extrinsic evidence is admissible only if a policy's language is ambiguous. *Id.*

The plain language of the Alternative Care Provision unambiguously requires acceptance of an alternative plan of care by Sentry before services are covered. *See Roland v. Transam. Life Ins. Co.*, No. 08-10941, 2009 U.S. App. LEXIS 14179, at *3 (5th Cir. June 29, 2009) (per curiam) (finding unambiguous an alternative plan of care provision requiring mutual agreement among insured, insurer, and physician). Kneal attempts to support his argument with reference to extrinsic evidence. Such evidence, however, is not allowed to create an ambiguity. Therefore, because Sentry determined that an alternative plan of care covering rent, housekeeping, and food services at Woodside Terrace was unacceptable, the Alternative Care Provision does not apply. Accordingly, summary judgment in favor of Sentry is warranted on this claim.

**B.     Breach of fiduciary duty**

Kneal also maintains that Sentry breached a fiduciary duty. "A fiduciary relationship exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (quotation marks omitted). "[T]he contractual relationship between insurer and insured necessarily involves competing interests, which often generate litigation between the insurer and insured. Thus, at its inception, the insurer-insured relationship is not fiduciary." *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007) (quotation marks omitted). Nevertheless, Minnesota law allows for the possibility of a fiduciary relationship between an insured and an insurer if special circumstances exist. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 959 (D. Minn. 2000) (citing *Stark v. Equitable Life Assurance Co.*, 285 N.W. 466, 470 (Minn. 1939)).

Here, Kneal argues that a fact issue remains as to whether special circumstances exist between an insurer and an insured who "is an aged and infirm purchaser of long term care

insurance from a company representing through its agent that its coverage is more generous than [its] competitors." Kneal also refers to his "unique vulnerability." Kneal, however, cites no cases finding a fiduciary relationship between an insured and insurer based on the insured's age and infirmity alone. Moreover, no evidence supports Kneal's physical or mental infirmity at the time he procured the Policy. Accordingly, the undisputed facts do not give rise to a fiduciary duty, and summary judgment in favor of Sentry is warranted on this claim.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED that:

1. Sentry's Motion for Summary Judgment [Docket No. 46] is GRANTED.
2. The Policy does not cover the expenses Kneal incurred at Woodside Terrace for rent, housekeeping, and food services.
3. Kneal's breach of fiduciary duty claim is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY

Dated: October 9, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge